IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEDAC GESELLSCHAFT FÜR KLINISCHE SPEZIALPRÄPARATE MBH and MEDEXUS PHARMA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SOMERSET THERAPEUTICS, LLC, SOMERSET PHARMA, LLC, SOMERSET THERAPEUTICS PRIVATE LIMITED f/k/a SOMERSET THERAPEUTICS LIMITED, and ODIN PHARMACEUTICALS, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) C.A. No. _____ ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT

Plaintiffs medac Gesellschaft für klinische Spezialpräparate mbH ("medac") and Medexus Pharma, Inc. ("Medexus Pharma") (collectively, "Plaintiffs") by and through their undersigned attorneys, bring this action against Defendants Somerset Therapeutics, LLC ("Somerset Therapeutics"), Somerset Pharma, LLC ("Somerset Pharma"), Somerset Therapeutics Private Limited f/k/a Somerset Therapeutics Limited ("Somerset Pvt. Ltd."), and Odin Pharmaceuticals, LLC ("Odin") (collectively "Somerset" or "Defendants").

## NATURE OF ACTION

1. This is an action for infringement of United States Patent No. 8,664,231 ("the '231 Patent") in relation to Somerset's Abbreviated New Drug Application ("ANDA") No. 221326 (the "Somerset ANDA"), which seeks approval from the U.S. Food & Drug Administration ("FDA") to make, use, offer to sell, or sell a proposed generic methotrexate subcutaneous injection, 50 mg/mL product (7.5 mg/0.15 mL, 10 mg/0.2 mL, 12.5 mg/0.25 mL, 15 mg/0.3 mL, 17.5 mg/0.35 mL, 20 mg/0.4 mL, 22.5 mg/0.45 mL, 25 mg/0.5 mL, 27.5 mg/0.55 mL, and 30

mg/0.6 mL) ("Proposed ANDA Product"), referencing Medexus Pharma's RASUVO®

(methotrexate) injection product ("RASUVO®") as the reference listed drug before the

expiration of the '231 patent.

2.   Plaintiffs also seek a declaratory judgment under the Patent Laws of the United

States, 35 U.S.C. § 100 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that

Somerset's commercial manufacture, use, offer for sale, sale in the United States, and/or

importation into the United States of its Proposed ANDA Product would directly and indirectly

infringe the '231 Patent.

## PARTIES

3.   Plaintiff Medexus Pharma is a corporation organized and existing under the laws of

the State of Delaware, having its principal place of business at 29 North Wacker Drive, Suite

704, Chicago, IL.

4.   Medexus Pharma is the holder of New Drug Application ("NDA") No. 205776 (the

"Medexus NDA"), including all supplements thereto, for RASUVO®. Medexus Pharma is the

exclusive licensee of the '231 Patent in the field applicable to RASUVO® and holds

exclusionary rights affected by Defendants' proposed conduct. Medexus Pharma has distributed

and sold RASUVO® in the United States for over a decade.

5.   Plaintiff medac is a German private limited liability company organized under the

laws of Germany, having its principal place of business at Theaterstrasse 6, 22880 Wedel,

Germany. medac is a pharmaceutical company engaged in the research, development,

manufacture, licensing, commercialization, and supply of medicinal products worldwide.

6.   medac is the owner of the '231 Patent. medac manufactures RASUVO® for

distribution and sale in the United States by Medexus Pharma.

7.   Upon information and belief, Defendant Somerset Therapeutics is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 300 Franklin Square Drive, Somerset, New Jersey 08873. On information and belief, Somerset Therapeutics is in the business of, among other things, manufacturing, promoting, marketing, selling, offering for sale, using, distributing in the United States, and importing into the United States, generic versions of branded pharmaceutical drugs for the U.S. market, including in this judicial district. On information and belief, Somerset Therapeutics holds any intellectual property rights and marketing authorizations for Somerset's drug products.

8.   On information and belief, Defendant Somerset Pharma is a limited liability company organized under the laws of the State of Delaware, having a principal place of business at 300 Franklin Square Drive, Somerset, New Jersey 08873. On information and belief, Somerset Pharma is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the United States market, including in this judicial district. On information and belief, Somerset Pharma is a wholly owned subsidiary of Somerset Therapeutics.

9.   On information and belief, Defendant Somerset Pvt. Ltd. is a corporation organized and existing under the laws of India, having corporate headquarters at 54/1, Budihal, Nelamangala, Bengaluru-562123, Karnataka, India. On information and belief, Somerset Limited is in the business of, among other things, manufacturing and selling generic versions of branded pharmaceutical products for the United States market, including in this judicial district, directly and through its affiliates. On information and belief, Somerset Limited plays a crucial

role in developing and manufacturing generic pharmaceutical products for Somerset

Therapeutics for the United States market.

10.  On information and belief, Defendant Odin is a limited liability company

organized under the laws of the State of Delaware, having a principal place of business at 300

Franklin Square Drive, Somerset, New Jersey 08873. On information and belief, Odin is in

the business of, among other things, manufacturing and selling generic versions of branded

pharmaceutical products for the United States market including in this judicial district. On

information and belief, Odin operates as a research and development facility that supports all

research and development efforts undertaken by Somerset.

11.  On information and belief, Defendants hold themselves out as affiliated entities

within the same corporate family for purposes of manufacturing, marketing, selling, and

distributing generic drug products through the United States, including in this judicial district.

12.  On information and belief, Defendants acted in concert to prepare and submit the

Somerset ANDA to the FDA.

13.  On information and belief, upon FDA approval of the Somerset ANDA,

Defendants will work in concert with one another to make, use, offer to sell, and/or sell the

drug products that are the subject of the Somerset ANDA throughout the United States, and/or

import such drug products into the United States, including in this judicial district.

14.  On information and belief, Defendants will each derive significant financial

benefit resulting from the FDA's approval of the Somerset ANDA and subsequent marketing

and use of Somerset's ANDA product throughout the United States, including in this judicial

district.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

16. This Court has personal jurisdiction over Somerset Therapeutics because, on information and belief, Somerset Therapeutics is a Delaware limited liability company, and thus resides in this district. On information and belief, Somerset Therapeutics also maintains pervasive, continuous, and systematic contacts with the State of Delaware through the marketing, distribution, and sale of generic versions of branded pharmaceutical products in the State of Delaware and by deriving substantial revenue from the importation and sale of its products in the State of Delaware.

17. This Court has personal jurisdiction over Somerset Pharma because, on information and belief, it is a Delaware limited liability company. On information and belief, Somerset Pharma maintains pervasive, continuous, and systematic contacts with the State of Delaware through the marketing, distribution, and sale of generic versions of branded pharmaceutical products in the State of Delaware and by deriving substantial revenue from the importation and sale of its products in the State of Delaware.

18. This Court has personal jurisdiction over Somerset Pvt. Ltd. because, on information and belief, it maintains pervasive, continuous, and systematic contacts with the State of Delaware through the marketing, distribution, and sale of generic versions of branded pharmaceutical products in the State of Delaware, directly and through its affiliates, and by deriving substantial revenue from the importation and sale of its products in the State of Delaware.

- 5 -

19.     Alternatively, this Court may also exercise jurisdiction over Somerset Pvt. Ltd. because pursuant to Fed. R. Civ. P. 4(k)(2), to the extent that Somerset Pvt. Ltd., as a foreign defendant, is not subject to personal jurisdiction in any state's court of general jurisdiction, it is subject to this Court's jurisdiction based on contacts with the United States as a whole, including without limitation through the manufacture, importation, distribution, and sales of its pharmaceutical products throughout the United States, including in this judicial district.

20.     This Court has personal jurisdiction over Odin because, on information and belief, it is a Delaware limited liability company. On information and belief, Odin maintains pervasive, continuous, and systematic contacts with the State of Delaware through the marketing, distribution, and sale of generic versions of branded pharmaceutical products in the State of Delaware and by deriving substantial revenue from the importation and sale of its products in the State of Delaware.

21.     Venue is proper in this district as to Somerset Therapeutics, pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b), because Somerset Therapeutics is formed in the State of Delaware and thus resides in this district.

22.     Venue is proper in this district as to Somerset Pharma, pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b), because Somerset Pharma is formed in the State of Delaware and thus resides in this district.

23.     Venue is proper as to Somerset Pvt. Ltd., pursuant to 28 U.S.C. § 1391(c)(3) and 28 U.S.C. § 1400(b), because Somerset Pvt. Ltd. is a foreign corporation not residing in any judicial district and may be sued in any judicial district that has personal jurisdiction, including in this judicial district.

24. Venue is proper in this district as to Odin, pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b), because Odin is formed in the State of Delaware and thus resides in this district.

## THE DRUG APPROVAL PROCESS

25. A company seeking to market a new pharmaceutical drug in the United States must first obtain approval from the FDA, typically through the filing of a NDA. *See* 21 U.S.C. § 355(a). The sponsor of the NDA is required to submit to the FDA information on all patents claiming the drug that is the subject of the NDA, or a method of using that drug, and FDA then lists the patent information in its publication, the *Approved Drug Products with Therapeutic Equivalence Evaluations*, which is referred to as the "Orange Book." *See* 21 U.S.C. §§ 355(b)(1) and (c)(2).

26. A company seeking to market a generic version of a previously approved drug is not required to submit a full NDA. Instead, it may file an ANDA. *See* 21 U.S.C. § 355(j). The generic drug approval process is considered "abbreviated" because the generic manufacturer may piggyback on the innovator company's data and FDA's prior finding of safety and efficacy by demonstrating, among other things, that the generic product is bioequivalent to the previously approved drug (the "reference listed drug" or "branded drug").

27. In conjunction with this "abbreviated" application process, Congress has put in place a process for resolving patent disputes relating to generic drugs, pursuant to which an ANDA filer must provide certifications addressing each of the patents listed in the Orange Book for the branded drug. *See* 21 U.S.C. § 355(j)(2)(A)(vii); 21 C.F.R. § 314.94(a)(12). An ANDA filer may certify, for instance, that it believes a patent is invalid, not enforceable, or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is submitted.

*See* 21 U.S.C. § 355(j)(2)(A)(vii)(IV); *see also* 21 C.F.R. § 314.94(a)(12)(i)(A)(4). This is known as a "Paragraph IV Certification."

28.     The filer of an ANDA with a Paragraph IV Certification must also provide notice to both the owner of the listed patents and the holder of the NDA for the referenced listed drug. This "Paragraph IV Notice" must include a detailed statement of the factual and legal bases for the applicant's belief that the challenged patent is invalid or not infringed by the proposed generic product. *See* 21 U.S.C. § 355(j)(2)(B); 21 C.F.R. § 314.95.

29.     If the patentee or NDA holder files a patent infringement action within 45 days of receiving a Paragraph IV Notice from an ANDA filer, final approval of the ANDA is subject to a litigation stay. *See* 21 U.S.C. § 355(j)(5)(B)(iii); 21 C.F.R. § 314.107(b)(3). The litigation stay runs for 30 months from receipt of the notice letter. *Id.* The stay provides an innovator company with the opportunity to resolve any patent dispute before the generic product enters the market. *See id.*

## FACTUAL BACKGROUND

### The '231 Patent

30.     On March 4, 2014, the U.S. Patent and Trademark Office ("USPTO") duly and legally issued the '231 Patent, entitled "Concentrated Methotrexate Solutions," to medac as the assignee. A true and correct copy of the '231 Patent is attached as Exhibit A.

31.     The '231 Patent expires no earlier than June 1, 2029.

32.     The claims of the '231 Patent are generally directed to a method of treating inflammatory autoimmune diseases by subcutaneously administering methotrexate at concentrations greater than 30 mg/ml.

33.     Plaintiffs together possess all right, title, and interest in the '231 patent, and therefore have the right to sue for past, present, and future infringement of the '231 patent.

**RASUVO®**

34.     Medexus Pharma is the holder of the Medexus NDA, including all supplements thereto, for RASUVO®. RASUVO® is a methotrexate injection product for the treatment of patients with severe, active rheumatoid arthritis (RA) and polyarticular juvenile idiopathic arthritis (pJIA), who are intolerant of or had an inadequate response to first-line therapy, and for symptomatic control of severe, recalcitrant, disabling psoriasis in adults who are not adequately responsive to other forms of therapy.

35.     On September 10, 2013, Medexus Pharma submitted the Medexus NDA under Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act ("FDCA") seeking FDA approval for RASUVO®. On July 10, 2014, the FDA approved the Medexus NDA.

36.     Medexus Pharma timely submitted information regarding the '231 Patent for listing in FDA's Orange Book with respect to RASUVO® at 7.5mg/0.15 mL, 10 mg/0.20 mL, 12.5 mg/0.25 mL, 15 mg/0.30 mL, 17.5 mg/0.35 mL, 20 mg/0.40 mL, 22.5 mg/0.45 mL, 25 mg/0.50 mL, 27.5 mg/0.55 mL, and 30 mg/0.60 mL pursuant to 21 U.S.C. §§ 355(b)(1) and (c)(2). The FDA thereafter listed the '231 Patent in the Orange Book with respect to those products pursuant to 21 C.F.R. § 314.53(e).

37.     The FDA-approved label for RASUVO®, *inter alia*, provides information and instructions for the safe and effective use of RASUVO® by healthcare providers and patients. A true and correct copy of the current RASUVO® label is attached as Exhibit B.

38.     The RASUVO® label states that RASUVO® is indicated for (1) management of patients with severe, active rheumatoid arthritis (RA) and polyarticular juvenile idiopathic arthritis (pJIA), who are intolerant of or had an inadequate response to first-line therapy, and (2) symptomatic control of severe, recalcitrant, disabling psoriasis in adults who are not adequately responsive to other forms of therapy. *Id.*, § 1, Indications and Usage.

39. The RASUVO® label also provides that "Rasuvo is an injection containing methotrexate at a concentration of 50 mg/mL available as a manually-triggered auto-injector that administers a single dose of methotrexate solution in the following dosage strengths: 7.5 mg, 10 mg, 12.5 mg, 15 mg, 17.5 mg, 20 mg, 22.5 mg, 25 mg, 27.5 mg, 30 mg." *Id.*, § 3, Dosage Forms and Strengths.

40. According to the RASUVO® label, RASUVO® contains methotrexate as the active ingredient in a "sterile, preservative-free, non-pyrogenic solution for a single subcutaneous injection." *Id.*, § 11, Description. RASUVO® also "contains the following inactive ingredients: sodium chloride 0.4% w/v; water for injections, sodium hydroxide and, if necessary, hydrochloric acid are added to adjust the pH to approximately 8.5." *Id.*

### Somerset's Infringing Proposed ANDA Product

41. On information and belief, on or before June 10, 2026, Somerset Therapeutics, with the aid of Somerset Pharma, Somerset Pvt. Ltd., and Odin, submitted the Somerset ANDA pursuant to 21 U.S.C. § 355(j), seeking FDA approval to engage in the commercial manufacture, importation, use, marketing, and sale of its Proposed ANDA Product.

42. Somerset sent Plaintiffs a notice letter, dated June 10, 2026, stating that Somerset Therapeutics had submitted the Somerset ANDA to the FDA seeking approval to manufacture, import, use, market, and/or sell the Proposed ANDA Product in the United States prior to the expiration of the '231 Patent (the "Paragraph IV Notice Letter").

43. Plaintiff Medexus Pharma received the Paragraph IV Notice Letter on June 11, 2026, and Plaintiff medac received the Paragraph IV Notice Letter on June 12, 2026.

44. The Paragraph IV Notice Letter asserts that the '231 Patent is invalid, unenforceable, and/or not infringed by the commercial manufacture, use, or sale of the Proposed

ANDA Product. The Paragraph IV Notice Letter offered no substantive noninfringement or unenforceability arguments.

45.     Somerset's submission of the Somerset ANDA to the FDA, including any amendments or supplements thereto, and any commercial manufacture or sale in the United States, or import into the United States, by Somerset of the Proposed ANDA Product, constitutes infringement of the '231 Patent, as detailed below.

46.     This action is being commenced before the expiration of forty-five days from the date Plaintiffs received Somerset's Paragraph IV Notice Letter, which was dated June 10, 2026. Accordingly, Plaintiffs are entitled to a 30-month stay under 21 U.S.C. § 355(j)(5)(B)(iii) and 21 C.F.R. § 314.107(b)(3), which expires approximately six months prior to the expiration of '231 Patent.

**COUNT I**
**<u>INFRINGEMENT OF THE '231 PATENT</u>**

47.     Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

48.     Somerset's submission of the Somerset ANDA to the FDA, including the Paragraph IV Certification submitted therewith, which seeks approval to engage in the commercial manufacture, use, marketing, offer for sale, sale in the United States and/or importation into the United States, of the Proposed ANDA Product prior to the expiration of the '231 Patent, constitutes infringement by Somerset of one or more claims of the '231 Patent under 35 U.S.C. § 271(e)(2)(A).

49.     The commercial manufacture, use, marketing (including, on information and belief, marketing the Proposed ANDA Product as a generic substitute for RASUVO® to be used and administered in the same manner as RASUVO®), offer for sale, sale in the United States, and/or importation into the United States, of the Proposed ANDA Product with its

accompanying package insert by Somerset before the expiration of the '231 Patent would constitute affirmative steps to actively encourage, instruct, direct, recommend, and/or promote direct infringement of the '231 Patent.

50.    On information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, if Somerset's Proposed ANDA Product is approved, Somerset will make, offer for sale, sell, or import the Proposed ANDA Product in a manner that, when used in accordance with its proposed labeling, would infringe at least, by way of example, independent claim 1 and dependent claim 3 of the '231 Patent, which recite as follows:

1.   A method for the treatment of inflammatory autoimmune diseases in a patient in need thereof, comprising:

subcutaneously administering to said patient a medicament comprising methotrexate in a pharmaceutically acceptable solvent at a concentration of more than 30 mg/ml.

3.   The method according to claim 2[1], wherein the methotrexate is present at a concentration of about 50 mg/mL.

51.    On information and belief, Somerset's Proposed ANDA Product will substantively copy the RASUVO® label. *See* 21 C.F.R. § 314.94(a)(8)(iv). Accordingly, on information and belief and subject to Plaintiffs' ongoing investigation and discovery efforts, Somerset's Proposed ANDA Product will share the same indications as RASUVO®, including its indications for patients with severe, active rheumatoid arthritis (RA) and polyarticular juvenile idiopathic arthritis (pJIA), who are intolerant of or had an inadequate response to first-line therapy, and for symptomatic control of severe, recalcitrant, disabling psoriasis in adults who are not adequately responsive to other forms of therapy. Therefore, if approved, Somerset's

---

[1] Claim 2 recites "The method according to claim 1, wherein the methotrexate is present at a concentration of more than 30 mg/mL to 100 mg/mL."

Proposed ANDA Product would be indicated for the treatment of inflammatory autoimmune diseases in a patient in need thereof, just as RASUVO® is.

52. On information and belief, the label for Somerset's Proposed ANDA Product, including its indications for patients with severe, active rheumatoid arthritis (RA) and polyarticular juvenile idiopathic arthritis (pJIA), who are intolerant of or had an inadequate response to first-line therapy, and for symptomatic control of severe, recalcitrant, disabling psoriasis in adults who are not adequately responsive to other forms of therapy, and, on information and belief, Somerset's marketing of the Proposed ANDA Product as a generic substitute for RASUVO® to be used and administered in the same manner as RASUVO®, would constitute active steps to direct, instruct, recommend, encourage, and/or promote the intended result of patients, physicians, prescribers, and/or healthcare providers subcutaneously administering Somerset's methotrexate-containing Proposed ANDA Product (a medicament) to patients suffering from an inflammatory autoimmune disease.

53. According to Somerset's Paragraph IV Notice Letter, and upon information and belief, Somerset's Proposed ANDA Product will contain a subcutaneous solution of methotrexate in a pharmaceutically acceptable solvent at a concentration of 50 mg/mL in dosage strengths of 7.5 mg/0.15 mL, 10 mg/0.2 mL, 12.5 mg/0.25 mL, 15 mg/0.3 mL, 17.5 mg/0.35 mL, 20 mg/0.4 mL, 22.5 mg/0.45 mL, 25 mg/0.5 mL, 27.5 mg/0.55 mL, and 30 mg/0.6 mL.

54. Somerset's Paragraph IV Notice Letter confirms that the Proposed ANDA Product is indicated for subcutaneous administration, like RASUVO®.

55. Accordingly, for the above reasons, on information and belief, Somerset with its label for Somerset's Proposed ANDA Product would be taking active steps to direct, instruct, recommend, encourage, promote, and encourage patients, physicians, prescribers, and/or

healthcare providers to subcutaneously administer Somerset's Proposed ANDA Product containing methotrexate in a pharmaceutically acceptable solvent at a concentration of 50 mg/mL to treat inflammatory autoimmune diseases in a patient in need thereof.

56.     On information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, the manufacture, use (including as directed in Somerset's proposed labeling for the Proposed ANDA Product), offer for sale, sale, marketing, distribution in the United States, and/or importation into the United States, of Somerset's Proposed ANDA Product would result in patients, physicians, prescribers, and/or healthcare providers satisfying each of the recited elements of the method recited in at least claims 1 and 3 of the '231 Patent, either literally or under the doctrine of equivalents.

57.     On information and belief, if the FDA were to approve the Somerset ANDA, Somerset's commercial manufacture, use, marketing, offer for sale, sale in the United States, and/or importation into the United States of the Proposed ANDA Product, including administration of the Proposed ANDA Product according to the foregoing label instructions, would necessarily or inevitably cause patients, physicians, prescribers, and/or other healthcare providers to directly infringe at least claims 1 and 3 of the '231 Patent. As described herein, Somerset's expected commercial activities in the context of its Proposed ANDA Product would actively induce and contribute to such direct infringement.

58.     Somerset had knowledge of the claims of the '231 Patent at least as early as the date it filed the Somerset ANDA. Despite this knowledge, Somerset has asserted its intent to engage in the manufacture, use, offer for sale, sale, marketing (including, on information and belief, marketing the Proposed ANDA Product as a generic substitute for RASUVO® to be used and administered in the same manner as RASUVO®), distribution in the United States,

and/or importation into the United States, of the Proposed ANDA Product with the proposed labeling, immediately and imminently upon approval of the Somerset ANDA. On information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts, by engaging in the foregoing activities, Somerset specifically intends to infringe, and cause acts that they know will infringe, the '231 Patent.

59.     On information and belief, Somerset's specific intent to actively induce and/or contribute to infringement of one or more claims of the '231 Patent, including at least claims 1 and 3, includes Somerset's decision to proceed with its plan to engage in the manufacture, use, offer for sale, sale, marketing, distribution in the United States, and/or importation into the United States, of the Proposed ANDA Product despite being aware that the proposed labeling to be included for the Proposed ANDA Product actively instructs, directs, recommends, encourages, and/or promotes direct infringement of one or more claims of the '231 Patent, including at least claims 1 and 3, and would engage in affirmative steps to encourage direct infringement of these claims.

60.     On information and belief, Somerset, with full knowledge of the '231 Patent, intends to and will actively induce infringement of the '231 Patent if the Somerset ANDA is approved, and it will do so immediately and imminently upon approval.

61.     RASUVO® and any corresponding generic methotrexate injection product for subcutaneous use is not a staple article of commerce and has no substantial approved uses that do not infringe one or more claims, including at least claims 1 and 3 of the '231 Patent. On information and belief, Somerset's Proposed ANDA Product is not a staple article of commerce and has no substantial uses that do not infringe at least claims 1 and 3 of the '231 Patent. Upon information and belief, and subject to Plaintiffs' ongoing investigation and discovery efforts,

Somerset, with full knowledge of the '231 Patent, knows that its Proposed ANDA Product is especially adapted for use in a manner that infringes the '231 Patent, is not a staple article of commerce, and has no substantial uses that do not infringe one or more claims, including at least claims 1 and 3 of the '231 Patent.

62.     Any launch by Somerset of the Proposed ANDA Product before expiration of the '231 Patent would cause Plaintiffs to suffer immediate and irreparable harm.

63.     Unless Somerset is enjoined from infringing the '231 Patent, actively inducing infringement of the '231 Patent, and contributing to the infringement by others of the '231 Patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law.

**COUNT II**
**DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '231 PATENT**

64.     Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

65.     These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

66.     For the reasons explained in Count I above, if the FDA were to approve the Somerset ANDA, Somerset's commercial manufacture, use, marketing, offer for sale, sale in the United States, and/or importation into the United States, of the Proposed ANDA Product with its accompanying package insert would constitute affirmative steps to actively encourage, instruct, direct, recommend, and/or promote direct infringement of one or more claims, including at least claims 1 and 3 of the '231 Patent.

67.     With full knowledge of the '231 Patent, Somerset submitted the Somerset ANDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, and/or sale of Somerset's Proposed ANDA Product prior to expiration of the '231 Patent.

68.     Any launch by Somerset of the Proposed ANDA Product before expiration of the '231 Patent would cause Plaintiffs to suffer immediate and irreparable harm.

69.     Somerset's infringement of the '231 Patent would be willful.

70.     A definite, immediate, and concrete controversy exists between Plaintiffs and Somerset as to whether Somerset's commercial manufacture, use, marketing, offer for sale, sale in the United States, and/or importation into the United States, of Somerset's Proposed ANDA Product with its proposed labeling prior to the expiration of the '231 Patent would infringe one or more claims, including at least claims 1 and 3 of the '231 Patent. Accordingly, Plaintiffs seek a declaration that such activities would infringe one or more claims of the '231 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Enter judgment that Somerset has infringed the '231 Patent, and a declaration that Somerset's commercial manufacture, distribution, use, marketing, offer for sale, sale in the United States, and/or importation into the United States, of the Proposed ANDA Product would infringe the '231 Patent;

B.     An order, pursuant to 35 U.S.C. § 271(e)(4)(A), that the effective date of any approval of the Somerset ANDA under § 505(j) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355(j), shall not be earlier than the expiration of the '231 Patent, as well as any extensions of exclusivities thereof;

C.     A permanent injunction, pursuant to 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283, restraining and enjoining Somerset, its respective officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from infringing the '231 Patent for the full term thereof;

D.      An order that damages or other monetary relief be awarded to Plaintiffs if Somerset engages in the commercial manufacture, use, marketing, offer to sell, sale in the United States, and/or importation into the United States, of the Proposed ANDA Product prior to the expiration of the '231 Patent for the full term thereof, including any extensions of exclusivities thereof, and that such damages or monetary relief be trebled and awarded to Plaintiffs with prejudgment interest;

E.      A declaration that this is an exceptional case and an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

F.      Costs and expenses incurred by Plaintiffs in this action; and

G.      Such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Karen Jacobs*

Katherine A. Helm
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

Karen Jacobs (#2881)
Brian P. Egan (#6227)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
began@morrisnichols.com
dfahnestock@morrisnichols.com

Brian Goldberg
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Attorneys for Plaintiffs medac Gesellschaft für klinische Spezialpräparate mbH and Medexus Pharma, Inc.*

Priyata Patel
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3300

*Attorneys for Medexus Pharma, Inc.*

James F. Haley, Jr.
Brian M. Gummow
LEASON ELLIS LLP
One North Lexington Avenue
Suite 1200
White Plains, New York 10601
(914) 821-3081

*Attorneys for medac Gesellschaft für klinische Spezialpräparate mbH*

July 24, 2026

- 19 -